UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------
ELISA ISAAC,

                 Plaintiff,

              v.

ANDREW M. SAUL,

                 Defendant.
--------------------------------------------------------------

**MEMORANDUM & ORDER**
20-CV-4672 (MKB)

MARGO K. BRODIE, United States District Judge:

Plaintiff Elisa Isaac commenced the above-captioned action on October 1, 2022, pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for Supplemental Security Income ("SSI") under the Social Security Act (the "SSA"). (Compl., Docket Entry No. 1.) Plaintiff moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, arguing that the findings of Administrative Law Judge Seth I. Grossman (the "ALJ") were not supported by substantial evidence — namely, his failure to consider all of Plaintiff's severe impairments and his failure to resolve material issues of fact as to Plaintiff's ability to perform jobs. (Pl.'s Mot. for J. on the Pleadings ("Pl.'s Mot."), Docket Entry No. 13; Pl.'s Mem. in Supp. of Pl.'s Mot. ("Pl.'s Mem."), Docket Entry No. 13-1.) The Commissioner cross-moves for judgment on the pleadings, arguing that substantial evidence supported the ALJ's findings. (Comm'r's Mot. for J. on the Pleadings ("Comm'r's Mot."), Docket Entry No. 17; Comm'r's Mem. in Supp. of Comm'r's Mot. ("Comm'r's Mem."), Docket Entry No. 17-1.)

For the reasons set forth below, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion for judgment on the pleadings.

## I.   Background

Plaintiff was born in 1971, (Certified Admin. R. ("R.") 356, Docket Entry No. 12), and obtained a GED and certificates as a security guard, childcare provider, and home health aide, (R. 531, 1360).  She worked as a home health aide until 2008, and as a housekeeper at a hospital until 2015.  (R. 487.)  Plaintiff stopped working in April of 2015 because of pneumonia.  (R. 531.)  Plaintiff applied for SSI on May 17, 2016, (R. 455–56), alleging disability beginning in October of 2015 due to difficulty walking and using her left hand following a stroke, (R. 23, 455, 483–84, 530).  The Social Security Administration initially denied her claim on October 11, 2016, (R. 177–92), and Plaintiff, represented by counsel, appeared at a hearing with an administrative law judge on August 28, 2019, (R. 33).  By decision dated October 9, 2019, the ALJ determined that Plaintiff is not disabled.  (R. 9–31.)  On August 12, 2020, the Social Security Administration Appeals Council denied Plaintiff's request for review of the ALJ's determination, rendering his decision final.  (R. 1–5.)  Plaintiff timely appealed to this Court. (*See* Compl.)

### a.   Hearing before the ALJ

On August 28, 2019, the ALJ heard testimony from Plaintiff, medical expert Dr. Steven Goldstein ("ME"), and Vocational Expert Dr. Pat Green ("VE").  (R. 33.)

#### i.   Plaintiff's testimony

Plaintiff testified that she had left-sided numbness and experienced a lack of balance after her stroke in 2015.  (R. 41–42.)  She was right-handed, and her left arm was "not well."  (R. 42.) She used a cane all the time and was unable to lift a gallon of milk with her left arm.  (R. 42, 61.) She dropped items with her left arm due to a lack of strength and could not button clothes with her left hand.  (R. 43–44.)  She experienced episodes of involuntary shaking that she could not

control.  (R. 44.)  She could not bend to pick up items due to a lack of balance.  (R. 44.)  Plaintiff

was no longer able to work, provide for her family, organize things for herself, or be

independent, and needed assistance to attend appointments.  (R. 46.)

### ii.   Medical expert testimony

The ME testified that it was unclear whether Plaintiff had suffered a stroke based on the

medical examination findings in the record.  (R. 51–52.)  He noted that "there's a history that she

had a stroke.  She is said to have a lesion in the left caudate."  (R. 50.)  However, Plaintiff had a

normal MRI with "no evidence of old stroke [and t]here are a few scattered white matter images

that potentially could be small strokes."  (R.50.)  Plaintiff also had a normal CAT scan that "does

not show the lesions in the caudate any longer."  (R. 50.)  Physical examination showed

weakness in the left-upper and left-lower extremities, but "her weakness is on the left side so that

doesn't fit" with a stroke.  (R. 50.)  Conversion disorder could cause weakness on one side of the

body, and results on the physical examination show that could be true, but "there's no Babinski

sign, reflex or muscle tone changes in the muscles[, s]o it doesn't really fit together."  (R. 51.)

Furthermore, Plaintiff had an unsteady, slow, and short-step gait, while a hemiparetic gait is

expected for a stroke; deep tendon reflexes were 1+, while reflexes are usually increased if there

is a stroke; increased muscle tone in the left-lower extremity fits with a possible stroke;

decreased light touch sensation also fits with a stroke; diminished sensation to pain and

temperature is expected with light touch sensation, but it is separated here.  (R. 51.)  In summary:

> There obviously has to be some reason that she has [these
> symptoms], and the diagnosis in the record that would explain that
> is the conversion disorder.  It doesn't fit with an organic picture,
> the neurologic examinations do not fit with someone who has a[n]
> organic lesion such as a tumor or stroke, abscess, multiple sclerosis,
> all sorts of things that could cause weakness like that.  It doesn't
> fit.

(R. 54.)  The ME testified that Plaintiff could do sedentary work, including sit for six hours a day, stand and walk non-consecutively two hours a day, and lift ten pounds occasionally.  He clarified that this opinion would not conflict with any of the medical or physical examinations, (R. 52), and that regardless of whether there is or is not a conversion disorder, Plaintiff should be able to do the full range of sedentary work based on the physical examination, (R. 58).  When asked whether it would be possible that Plaintiff needed a cane to ambulate, the ME responded that "it's certainly possible," and holding a cane on the right side is consistent with left-sided weakness.  (R. 61.)  He testified that Plaintiff could lift five pounds frequently and ten pounds occasionally with the left hand.  (R. 63.)

### iii.   Vocational expert testimony

The VE testified that an individual limited to sedentary work could not do Plaintiff's previous jobs.  (R. 65–66.)  However, an individual with Plaintiff's vocational profile and functional restrictions to sedentary work with the use of a cane could perform unskilled sedentary occupations such as a ticket checker, an order clerk, a surveillance system monitor, a call out operator, and a telephone quotation clerk.  (R. 66–67, 73–74, 81.)  A restriction against overhead reaching with the left arm would not preclude these jobs.  (R. 67.)

The VE testified that no jobs would be available for an individual of Plaintiff's age and education who was limited to: standing and walking at most two hours total per day and for no longer than twenty minutes at a time; using a cane to ambulate; never stooping, squatting, crouching, crawling, climbing stairs, or performing heavy lifting; never performing overhead activities with the left arm; frequent fingering, handling, and grasping with the left hand; no exposure to chemicals or respiratory irritants; and could only engage in simple English conversation and ask simple questions in English.  (R. 68.)  A limitation of no stooping would preclude all jobs.  (R. 68, 79.)

Further, the VE testified that if an individual ambulated — both stood and walked — with a

cane, then no jobs would be available because "even if she's at the sedentary level she's required to stand for up to two hours," and "if she has to stand up for two hours and [INAUDIBLE] the sedentary level, and she has a minimum of picking up items, moving items, she will have some use of it in both hands."  (R. 69.)  However, jobs would be available if the individual could stand without the cane and walk with the cane.  (R. 70.)  The use of a cane would only preclude the jobs identified if, while using the cane in one hand, the person could not do anything with the other hand.  (R. 71.)  Jobs could be performed "if you can walk with a cane and you can go to a different desk and come back with an item which weighs less than ten pounds."[1]  (R. 71.)

###### b.  Function report

On June 8, 2016, Plaintiff completed a Function Report and stated that she had difficulty walking and could not stand or walk for long, that her left hand was weak and she used her right hand for her cane, and that she had no problems paying attention, finishing tasks, or remembering things.  (R. 499–500, 503–04.)

###### c.  The ALJ's decision

The ALJ concluded that Plaintiff did not have a disability within the meaning of the Social Security Act from October 9, 2015, through the decision date.  (R. 15–25.)  In arriving at this conclusion, the ALJ conducted the five-step sequential analysis required by the SSA.[2]  20 C.F.R. § 416.920(a).

---

[1]  The VE noted that there are a few sedentary jobs that only require lifting and carrying up to five pounds, such as surveillance system monitor, call-out operator, and telephone quotation clerk.  (R. 73–74.)  These jobs could be done with a cane.  (R. 74, 81.)  However, a person who could lift only up to five pounds could not do these jobs because sometimes the weight of items lifted may go over five pounds, including items such as headphones, paperwork, order pads, and boxes of tickets.  (R. 75–76.)  For a sedentary level, "she needs to be able to lift up to ten pounds although [a] particular job doesn't lift on a normal basis ten pounds."  (R. 85.)

[2]  The five-step sequential process outlined by the SSA considers:

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 9, 2015, the alleged onset date of disability.  (R. 17.)  At step two, the ALJ found that Plaintiff had severe impairments of obesity and a syncope episode with left-sided weakness. (R. 17.)  The ALJ gave some weight to the opinion of consultative psychiatrist Dr. John Miller, who performed a one-time examination.  (R. 21–22.)  Dr. Miller's August 16, 2018, opinion found moderate mental impairments of attention and concentration but found no severe psychiatric impairments.  (R. 17, 22.)  With respect to conversion disorder, the ALJ found that "it does not matter, because the physical examinations show the claimant can do sedentary work, regardless of the cause for her left sided weakness," and that "[a]ny limitations from a conversion disorder are fully accounted for by limiting the claimant to sedentary work."  (R. 18, 22.)

At step three, the ALJ found that these impairments did not satisfy the criteria of a listed impairment.  (R. 18.)  The ALJ also found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work "except the [plaintiff] may need to use a cane."  (R. 18.) The ALJ "fully considered" the opinion of treating physician Dr. Ivan Rodriguez, who had treated Plaintiff for a period of at least three years beginning in 2015, but found that his opinion

---

(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*Demars v. Comm'r of Soc. Sec.*, 841 F. App'x 258, 260–61 (2d Cir. 2021) (quoting *Estrella v. Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019)).

was "not supported by the weight of the record evidence." (R. 23, 1887.) The ALJ found that consultative neurologist Dr. Chaim Shtock's August 12, 2016 opinion that Plaintiff had marked limitations with walking long distances, heavy lifting, squatting, crouching, frequent stair climbing, and performing overhead activities with the left arm; moderate to marked limitations with standing long periods, kneeling, and frequent bending; and moderate limitations with sitting long periods and using the left hand for fine and gross motor activity due to left hand weakness, numbness, and limited left wrist motion, (R. 1154–55), was "not totally convincing." (R. 20– 21.) Instead, the ALJ elected to "follow the opinion of [the ME]" with respect to Plaintiff's physical capabilities, because the ME "has reviewed the whole record, including Dr. Shtock's examination and opinion," while "Dr. Shtock is an internist who saw the claimant only once and did not review the whole record." (*Id.*) The ALJ gave some weight to Dr. Shtock's August 16, 2018, opinion, noting that "claimant has no limitations for sitting," which the ALJ found to be "consistent with the opinion of [the ME]." (R. 21.) The ALJ accepted the ME's neurological opinion that "claimant should be able to do sedentary work" because "all the physical examinations in the record support the conclusion that the claimant should be able to do sedentary work." (R. 22.) The ALJ found that "[b]esides the left-sided weakness, there is nothing in the record that even remotely precludes sedentary work." (R. 23.)

At step four, the ALJ found that Plaintiff could no longer perform her past relevant work as a security guard, home health aide, or hostess. (R. 23.) At step five, the ALJ found that, in light of Plaintiff's RFC and vocational profile, she could perform sedentary work that exists in significant numbers in the national economy, such as ticket checker, surveillance system monitor, call out operation, and telephone quotation clerk. (R. 24.) The ALJ concluded that Plaintiff could lift or carry ten pounds occasionally, with either the right or left upper extremity.

(R. 24.)  Therefore, the ALJ found that Plaintiff was not disabled within the meaning of the Act. (R. 25.)

## II.   Discussion

### a.   Standard of review

"In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision."  *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005); *see also Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)); *see also Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (per curiam) (same); *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (same).  Once an ALJ finds facts, the court "can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'" *Talyosef v. Saul*, 848 F. App'x 47, 48 (2d Cir. 2021) (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012))*.*  In deciding whether substantial evidence exists, the court will "defer to the Commissioner's resolution of conflicting evidence."  *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (quoting *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012)).  If, however, the Commissioner's decision is not supported by substantial evidence or is based on legal error, a court may set aside the Commissioner's decision.  *See Ewen v. Saul*, No. 19-CV-9394, 2021 WL 1143288, at *11 (S.D.N.Y. Mar. 23, 2021) (citing *Moran*, 569 F.3d at 112); *see also Prince v. Astrue*, 514 F. App'x 18, 20 (2d Cir. 2013) (citing *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).

**b.    The ALJ failed to fully assess all of Plaintiff's severe medical impairments and symptoms**

Plaintiff argues that, in assessing her medical impairments, first, the ALJ improperly discounted the impairments of conversion disorder, cerebral infarction, ataxia, hemiplegia, and gait dysfunction, as well as manipulative, postural, and speaking limitations.  (Pl.'s Mem. 16–18.)  Second, the ALJ discounted her testimony as to her subjective symptoms.  (*Id.* at 18–19.)  Finally, Plaintiff argues that these errors were not harmless because the impairments should have been included as part of the RFC determination.  (*Id.* at 19–22.)

Defendant argues that the ALJ assessed Plaintiff's RFC consistent with the opinions of the ME and consultative examiner Dr. Shtock.  (Comm'r's Mem. 11–12.)  Defendant contends that the ALJ properly considered the consistency of Plaintiff's symptoms with other evidence in the record, and that the alleged limitations did not impact the ultimate RFC determination.  (*Id.* at 12–16.)

In finding that Plaintiff did not suffer from other severe impairments, the ALJ did not assign any weight to the opinion of treating physician Dr. Rodriguez.  (R. 20–23.)  The ALJ found that Dr. Rodriguez's findings of ataxia, speech difficulties, and left side hemiparesis, (*see, e.g.*, R. 1978), were "not supported by the weight of the record evidence," (R. 23).  The ALJ also found Dr. Shtock's assessment "not totally convincing," (R. 20), and accepted Dr. Shtock's opinion only to the degree that it was "consistent with the opinion of [the ME]," (R. 21).  Instead, the ALJ elected to "follow" and "accept" the ME's opinion that "the claimant should be able to do sedentary work" because he "has been a neurologist for many years and has reviewed the whole record," and "his opinion [is] supported by the strong weight of the record evidence."  (R. 20–22.)

For the reasons set forth below, the ALJ erred in failing to provide any explanation as to

why he did not assign any weight to Dr. Rodriguez's assessments.

### i. The ALJ failed to comply with the treating physician rule

"[A] treating physician's statement that the claimant is disabled cannot itself be determinative." *Micheli v. Astrue*, 501 F. App'x 26, 28 (2d Cir. 2012) (quoting *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)); *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (same).  However, an ALJ "must follow" specific procedures "in determining the appropriate weight to assign a treating physician's opinion." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019); *see also Ferraro v. Saul*, 806 F. App'x 13, 14 (2d Cir. 2020) (holding that "[u]nder Second Circuit precedent and the applicable regulations," the ALJ must follow the two-step procedure laid out in *Estrella* to determine the appropriate weight to assign to the opinion of a treating physician).  "First, the ALJ must decide whether the opinion is entitled to controlling weight." *Estrella*, 925 F.3d at 95.  "[T]he opinion of a claimant's treating physician as to the nature and severity of [an] impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Id.* (alterations in original) (quoting *Burgess*, 537 F.3d at 128);[3] *see also Lesterhuis*, 805 F.3d at 88 (discussing the treating physician rule); *Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) ("The opinion of a

---

[3]  On January 18, 2017, the Social Security Administration published a final rule that changed the protocol for evaluating medical opinion evidence.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (codified at 20 C.F.R. §§ 404 & 416).  The "new regulations apply only to claims filed on or after March 27, 2017." *Smith v. Comm'r of Soc. Sec.*, 731 F. App'x 28, 30 n.1 (2d Cir. 2018).  Because Plaintiff's claim was filed prior to that date, the Court refers to versions of the regulations that were in effect prior to March 27, 2017.  *See White v. Berryhill*, No. 17-CV-4524, 2018 WL 4783974, at *4 n.4 (E.D.N.Y. Sept. 30, 2018) ("While the Act was amended effective March 27, 2017, the [c]ourt reviews the ALJ's decision under the earlier regulations because the [p]laintiff's application was filed before the new regulations went into effect.").

treating physician is accorded extra weight because the continuity of treatment he provides and the doctor/patient relationship he develops place[s] him in a unique position to make a complete and accurate diagnosis of his patient." (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983) (per curiam))).

"Second, if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it." *Estrella*, 925 F.3d at 95.  In deciding how much weight to assign to the opinion, the ALJ "must 'explicitly consider' the following, nonexclusive '*Burgess* factors': '(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Id.* at 95–96 (alteration in original) (quoting *Selian*, 708 F.3d at 418); *see also Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (citing 20 C.F.R. § 404.1527(d)(2)) (discussing the factors).  "At both steps, the ALJ must 'give good reasons . . . for the weight [it gives the] treating source's [medical] opinion.'" *Estrella*, 925 F.3d at 96 (alterations in original) (quoting *Halloran*, 362 F.3d at 32).  "An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight at step two is a procedural error." *Id.* (quoting *Selian*, 708 F.3d at 419–20).  "If 'the Commissioner has not [otherwise] provided 'good reasons' [for its weight assignment],'" the district court is unable to conclude that the procedural error is harmless, and remand is therefore appropriate, so that the ALJ can "comprehensively set forth [its] reasons." *Id.* (alterations in original) (quoting *Halloran*, 362 F.3d at 33); *see also Sanders v. Comm'r of Soc. Sec.*, 506 F. App'x 74, 77 (2d Cir. 2012) (noting that failure "to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand" (citing *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998))); *Halloran*, 362 F.3d at 32–33 ("We do not hesitate to remand when the Commissioner

has not provided 'good reasons' for the weight given to a treating physician[']s opinion . . . .").
However, if a "searching review of the record" assures the court that the "substance of the
treating physician rule was not traversed," the court will affirm.  *Estrella*, 925 F.3d at 96
(quoting *Halloran*, 362 F.3d at 32).

In rejecting Dr. Rodriguez's assessments, the ALJ failed to comply with the treating
physician rule.  Dr. Rodriguez treated Plaintiff for a period of at least three years between 2015
and 2018.  (R. 1887, 1227); *see Fontanez v. Colvin*, No. 16-CV-1300, 2017 WL 4334127, at *18
(E.D.N.Y. Sept. 28, 2017) (finding that a physician the plaintiff "regularly met with . . . for
numerous psychotherapy sessions" was a treating physician).  During this time, Dr. Rodriguez's
treatment records documented Plaintiff's changing conditions as a result of her suspected stroke
in October of 2015.  On August 24, 2015, prior to Plaintiff's suspected stroke, Dr. Rodriguez
noted that Plaintiff was "alert, active," "in no acute distress," and "moves all extremities
equally."  (R. 1887–88.)  On September 21, 2016, Dr. Rodriguez diagnosed Plaintiff with
"cerebral infarction," "abnormal liver function," "hypercholersterolemia," and "ataxic gait" and
noted that Plaintiff "suffered two strokes last year and since then has not recovered . . . shakes a
lot and needs assistance with certain daily necessities, cooking, cleaning, and shopping."  (R.
1879–80.)  On February 1, 2018, Dr. Rodriguez's records showed that Plaintiff experienced left-
sided weakness and was "referred to psych for []conversion disorder."  (R. 1227.)  Despite
briefly referencing Dr. Rodriguez's assessments in his report, the ALJ failed to acknowledge that
Dr. Rodriguez was Plaintiff's treating physician and did not appear to assign any weight to his
opinions.  (R. 23); *see Estrella*, 925 F.3d at 95 (noting that an ALJ "must follow" specific
procedures "in determining the appropriate weight to assign a treating physician's opinion").

The ALJ's failure to explain why he did not assign any weight to Dr. Rodriguez's

treatment records constitutes error. *See Hornyak v. Saul*, No. 18-CV-1950, 2020 WL 1910129, at *13 (D. Conn. Apr. 20, 2020) ("In his decision, the ALJ failed to specify the weight he assigned to [the] treating physicians . . . [and] [f]ailure to do so is legal error." (citing *Dailey v. Barnhart*, 277 F. Supp. 2d 226, 235 (W.D.N.Y. 2003))). The ALJ failed to assign any weight to Dr. Rodriguez's medical opinion because he based his determination of Plaintiff's severe impairments and limitations on the ME's testimony, and he dismissed other medical evidence that was inconsistent with the ME's opinion. The core of the ALJ's reasoning rested on the ME's testimony that Plaintiff "could do a full range of sedentary work," and "that all the physical examinations in the record support the conclusion that [Plaintiff] should be able to do sedentary work . . . regardless of the cause for her left sided weakness." (R. 22.) The ALJ gave great weight to the ME's testimony because he "is an impartial neurologist with many years of experience who reviewed the entire record," and because the ALJ found that "his opinion [is] supported by the strong weight of the record evidence." (R. 22.) However, in considering solely the ME's ultimate determination, the ALJ failed to recount any specific function-by-function findings. Other than references to the ME's answer to the ultimate question of whether Plaintiff could conduct sedentary work, the ALJ states only that Plaintiff "has some residual numbness, tingling, and weakness in the left leg and arms" and that "the physical examinations in the record are not consistent with a stroke" and "may be due to a conversion disorder." (R. 22.) The ALJ did not provide any explanation, and did not cite any evidence, to clarify why he found the ME's opinion consistent with the record evidence as a whole, and why he rejected Dr. Rodriguez's medical opinion based on the ME's opinion, especially where Dr. Rodriguez's opinion is largely supported by the findings of Dr. Shtock. (*See, e.g.*, R. 1227 (identifying left-sided weakness), 1879–80 (identifying uncontrolled shaking and ataxic gait); 20–21 (describing Dr. Shtock's

opinion that Plaintiff had moderate or marked limitations with using the left hand for fine and gross motor activity due to the weakness and numbness, kneeling, standing long periods, frequent bending, heavy lifting with the left upper extremity, squatting, crouching, frequent stair climbing, walking long distances, and performing overhead activities using the left arm).)

In light of the contrary evidence and the lack of any explanation as to why the ALJ failed to assign weight to Dr. Rodriguez's opinion, the ALJ failed to comply with the treating physician rule, and therefore committed error requiring remand. *See Rivera v. Berryhill*, No. 17-CV-991, 2018 WL 4328203, at *14–15 (S.D.N.Y. Sept. 11, 2018) ("Although the ALJ mentioned a few of [the treating physician's] findings, his failure to state expressly what weight, if any, he gave to them provides a separate basis for remand." (first citing *McClean v. Astrue*, 650 F. Supp. 2d 223, 228 (E.D.N.Y. 2009); and then citing *Crothers v. Colvin*, No. 13-CV-4060, 2015 WL 1190167, at *2 (S.D.N.Y. Mar. 16, 2015))); *Fontanez*, 2017 WL 4334127, at *18 ("By failing to assign any weight to [the plaintiff's] treating psychiatrist . . . and by implicitly rejecting [his] diagnoses without providing any reasons for doing so, the ALJ committed error that requires remand." (collecting cases)); *Crothers*, 2015 WL 1190167, at *2 (remanding where the ALJ failed to assign any weight to the plaintiff's treating physician's report); *Dailey*, 277 F. Supp. 2d at 235 ("The ALJ simply does not articulate the reasons for the weight he assigned, if any, to the opinions of [the treating physicians].  This lapse alone constitutes legal error and requires that the case be remanded."); *see also Paz v. Comm'r of Soc. Sec.*, No. 14-CV-6885, 2016 WL 1306534, at *11, *18 (E.D.N.Y. Mar. 31, 2016) (remand warranted where the ALJ afforded non-examining source's opinion "considerable weight" but "did not specifically identify the medical evidence that the ALJ concluded supported [the non-examining source's] findings"); *Simmons v. Colvin*, No. 15-CV-0377, 2016 WL 1255725, at *16 (E.D.N.Y. Mar. 28, 2016) (same).

### ii.   The ALJ's error was not harmless

The ALJ's error in discounting Dr. Rodriguez's opinion was not harmless.  At the administrative hearing, the VE testified that a hypothetical individual with Plaintiff's age, education, and the limitations assessed by the ALJ could, with the aid of a cane, perform unskilled sedentary occupations of a ticket checker, an order clerk, a surveillance system monitor, a call out operator, and telephone quotation clerk.  (R. 66–67, 73–74, 81.)  However, the VE further testified that any such person with a limitation preventing them from stooping would be precluded from all jobs.  (R. 68, 79.)  The expert also testified that if an individual both stood and walked with a cane, then no jobs would be available.  (R. 69.)  In particular, the use of a cane would preclude the jobs cited if, while using the cane in one hand, the person could not do the required tasks with the other hand.  (R. 71.)  Because the ALJ fails to explain why he did not assign any weight to Dr. Rodriguez's opinion, the Court cannot determine whether the limitations set forth by the VE regarding other jobs in the economy are properly met.  *See Estrella*, 925 F.3d at 96. Therefore, the ALJ's error in discrediting the opinion of Plaintiff's treating physician in this regard was not harmless and is grounds for remand.  *See Griffel v. Berryhill*, No. 16-CV-1772, 2017 WL 4286254, at *10 (E.D.N.Y. Sept. 26, 2017) (holding that the ALJ's failure to include a treating physician's uncontradicted opinion on the RFC determination was not harmless); *see also Lesterhuis*, 805 F.3d at 88.[4]

---

[4]  Because the Court remands the case because of the ALJ's error in failing to provide adequate justification for refusing to credit Dr. Rodriguez's opinion, and failing to satisfy the treating physician rule in determining Plaintiff's RFC, the Court does not address the arguments that the ALJ erred in disregarding Plaintiff's hearing testimony and that the ALJ erred by speculating on Plaintiff's ability to communicate in English.  *See Griffel v. Berryhill*, No. 16-CV-1772, 2017 WL 4286254, at *10 n.11 (E.D.N.Y. Sept. 26, 2017) (declining to address arguments presented by the parties that were different from the bases underlying the Court's decision to remand) (citing *Foxman v. Barnhart*, 157 F. App'x 344, 347–48 (2d Cir. 2005)); *Christopher B.*

Accordingly, because the ALJ failed provide any explanation as to why he did not assign any weight to Dr. Rodriguez's opinion, the ALJ failed to comply with the treating physician rule, and because the decision was not harmless, the Court grants Plaintiff's motion for remand.

## III.  Conclusion

For the foregoing reasons, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion for judgment on the pleadings.  The Commissioner's decision is vacated and this action is remanded for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).  The Clerk of Court is directed to close this case.

Dated:  September 12, 2022
        Brooklyn, New York

SO ORDERED:


_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

---

*v. Saul*, No. 19-CV-905, 2020 WL 5587266, at *20 (N.D.N.Y. Sept. 18, 2020) ("[I]n light of the fact that the ALJ's assessment of [the plaintiff's] credibility is inextricably intertwined with the ALJ's evaluation of the treating physician, . . . the [c]ourt is unable to conclude that the ALJ properly evaluated [the plaintiff's] credibility."); *Daniel v. Astrue*, No. 10-CV-5397, 2012 WL 3537019, at *11 (E.D.N.Y. Aug. 14, 2012) (explaining that "[t]he ALJ's determination that [the plaintiff's] allegations were inconsistent with the medical evidence was tainted by the ALJ's failure to properly evaluate the opinions of [the plaintiff's] treating physicians — a failure that would naturally have affected how the ALJ viewed the totality of the medical evidence" (citing *Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 291 (E.D.N.Y. 2004))).